# William A. Simmons v. The People, etc.

1. INDICTMENT—*Not Necessary to Prove Loss Suffered by Obtaining Signature with Intent to Cheat and Defraud.*—It is not necessary under an indictment for obtaining, with intent to cheat and defraud, a signature to a written instrument by false pretenses, to allege or prove that any loss was thereby suffered.

Indictment, for obtaining signature with intent to cheat and defraud. Error to the Criminal Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1899. Affirmed. Opinion filed April 17, 1900.

EDWIN L. HARPHAM and JOHN C. STETSON, attorneys for plaintiff in error.

CHARLES S. DENEEN, State's Attorney, and ALBERT C. BARNES, Assistant State's Attorney, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Plaintiff in error was indicted and convicted of obtaining by false representations the signature of Thomas B. Bryan to a warranty deed conveying certain property, valued at the time of the transfer at $135,000, and subject to a mortgage of $75,000.

It is sought to set aside the judgment of the Criminal Court, upon the alleged grounds that it is not justified by the evidence, and that the indictment is fatally defective.

In April, 1896, Thomas B. Bryan was the owner of an apartment building, described in the evidence as the Cambridge. A written proposition was submitted offering $60,000 for his equity in said building, to be paid in lands owned by "The Clark Syndicate Companies," located in Florida, at the price of ten dollars per acre. The proposition was signed "The Clark Syndicate, by George F. Montgomery." It is indorsed as accepted by Mr. Bryan, and contains the further indorsement: "Possession accorded April 8, 1896, and accepted same date. Thomas B. Bryan. Geo. F. Montgomery for Clark Syndicate." A second

agreement was entered into about the same time, including in the sale the furniture of the building, which recites *inter alia* that, having sold the said premises, describing them, "together with all the buildings and appurtenances thereon or thereto, known as 'The Cambridge' to the Clark Syndicate Companies," the said sale is to take effect as of April 1, 1896, the "purchaser assuming payment of the interest on the incumbrance on said property from September 16, 1895, together with the principal." This agreement is also signed, "Thomas B. Bryan. Clark Syndicate, by Geo. F. Montgomery."

Shortly thereafter the alleged attorney of the "Clark Syndicate" called at Mr. Bryan's office and it is said there dictated an agreement, in which it is recited that whereas Bryan has sold and conveyed the said premises to one Howard P. Simmons, subject to the $75,000 incumbrance, "and is to receive for the equity in said property 6,000 acres of land in Florida, now belonging to the Georgia and Florida Investment Company," therefore said Bryan is to have until January 1, 1897, to make his selection; with certain other agreements with reference to said Florida lands, not now material. This agreement was subsequently signed, "The Georgia and Florida Investment Co. W. A. Simmons, President." It appears, from a circular then shown to Bryan and now introduced in evidence, that said Georgia and Florida Investment Company was represented as one of four corporations, "operated and controlled by the syndicate of William Clark and associates of New York, and Paisley, Scotland."

Plaintiff in error arrived in Chicago from New York City, Sunday, April 12th. The next day the last mentioned agreement was brought to Bryan by the attorney of the syndicate, by whom it had been drafted. Perceiving that it contemplated a conveyance by him to Howard P. Simmons, whereas the accepted proposition and previous agreements had been in the name of the "Clark Syndicate," Bryan telephoned to Montgomery, was referred by him to plaintiff in error, and went to the office of the latter, which

by signs and documents was indicated to be the office of the "Clark Syndicate" and "Clark Syndicate Companies." It now appears also that in the same office the plaintiff in error, his son, Howard P. Simmons, and the said George F. Montgomery were conducting the business of an alleged secret partnership, known among themselves as the "M. & A.," meaning "Montgomery and Associates," the Montgomery of that firm being the wife of George F. Montgomery. This was unknown to Bryan at the time the transaction in controversy was consummated.

Up to this point there is no material dispute as to facts. Bryan, upon reaching the office of the "Clark Syndicate Companies," was introduced to plaintiff in error, whom he then met for the first time. It was at this interview the alleged false representations are said to have been made, and conflict begins as to material matters in dispute. Bryan states that he asked for an explanation with reference to the "Clark Syndicate Companies," and plaintiff in error explained that the syndicate was composed of a coterie of private citizens, some of them of enormous wealth; that the financial head was one William Clark of a great thread concern doing business at Paisley, Scotland, and New York; that he, plaintiff in error, was the executive head of the syndicate; that he was president of one of the companies, vice-president, general manager and general counsel of all four, and private counsel for Mr. Clark. Mr. Bryan says he, Bryan, stated that he did not like giving the deed as proposed, because his great object was to get rid of an incumbrance of $75,000, and he had made the trade expressly on the ground that the Clark Syndicate assumed the debt, and was reconciled to the transaction because of their great wealth. He states that plaintiff in error replied, in substance:

"But it is the Clark Syndicate. My son is merely the trustee for the Clark Syndicate. He holds the title and does in all our dealings as a matter of convenience for the Clark Syndicate. The Clarks are scattered, Mr. Clark most of the time in Scotland, now all over the world. We could not transact business on the scale we expect to, unless

we had somebody on hand who could take the title and make these conveyances."

The deed had been prepared for Mr. Bryan to execute, and he states that finally plaintiff in error agreed to guarantee the assumption of payment in accordance with the agreement above referred to, which recites the sale " to the Clark Syndicate Companies," and that the purchaser assumes payment of the incumbrance. Thereupon Mr. Bryan wrote on the bottom of the paper containing the agreement signed in the name of " The Georgia and Florida Investment Co., by W. A. Simmons, President," the following :

" In consideration of one dollar, to me in hand paid by Thomas B. Bryan, the receipt whereof is here acknowledged, I hereby guarantee the assumption of payment of the $75,000 incumbrance, and the interest thereon from September 16, 1895, referred to in the foregoing contract, holding said Bryan harmless therefrom. Witness my hand and seal the 13th day of April, A. D. 1896." Attached to this is the signature of plaintiff in error, " W. A. Simmons. (Seal.)"

While it is true the above assumption is attached to the last of the three agreements referred to, yet it is manifest they were all intended and treated as parts of the contract between the parties, and the assumption of payment guaranteed must be construed as relating to the only assumption clause therein—that in which the sale is stated to have been made to the " Clark Syndicate Companies," and the latter assume payment of interest and principal of the incumbrance. Plaintiff in error, it is true, states that Montgomery had no authority to use the name of the Clark Syndicate Companies in this way, and denies that he had ever seen or heard of the agreements signed by Montgomery in that name at the time of this interview of April 13th with Mr. Bryan. The latter, on the other hand, swears that he showed them to plaintiff in error at that interview, and the language of the so-called assumption guaranty seems to corroborate him. By that instrument plaintiff in error guarantees " the assumption of payment " of the

incumbrance and interest "referred to in the foregoing contract." There is no such assumption in any "foregoing contract," except one of those signed in the name of the "Clark Syndicate, by George T. Montgomery."

At this interview the papers were finally exchanged, and Bryan's deed to Howard P. Simmons conveying the property in question, and containing a clause whereby the grantee assumed and agreed to pay the $75,000 incumbrance, was delivered and placed upon record.

Plaintiff in error denies that he told Bryan that his son was taking the deed under a declaration of trust to any one, and that any misrepresentations whatever were made. But he states that "after the papers had been passed" a long conversation ensued, much of it of a general character, relating to enterprises in which not only the Clark syndicate but the parties themselves were interested. In the course of this conversation reference was again made to the "Cambridge" apartment building in controversy. He testifies that Bryan remarked, "I want Mr. Clark to be satisfied," and that he, plaintiff in error, replied, "Mr. Clark? Mr. Clark has nothing to do with the Cambridge;" that Bryan said, "Doesn't your son take the Cambridge, representing the Clark Syndicate Company?" to which plaintiff in error replied, "No, I represent the Clark Syndicate Company. In any trades we make, we have a little syndicate of our own; my son and myself and another;" to which he says Bryan remarked, "Well, it doesn't make any difference to me how you represent Mr. Clark. You are his great friend, and he has confidence in you. Mr. Montgomery says anything you want you can get; all the money you want." "I says, 'I can't get all I want from Mr. Clark, but as I said, I have known Mr. Clark, but never asked him to go into any outside matter. * * * I will tell him frankly the trade I have made myself. He knows our exact arrangement in this office; how we conduct our business here, and I will do my level best to carry this arrangement out.'"

By this testimony plaintiff in error makes it appear that

after the papers had passed, and after he had remarked to Bryan, as he says he did, "Mr. Bryan, that trade is finished and I am entirely satisfied with it; I don't know much about apartment buildings," etc., that then, when the transaction had been concluded, Bryan still supposed that Howard P. Simmons, the son of plaintiff in error, had taken the deed to the "Cambridge" apartment building in question, as representing the Clark syndicate, and was thus, for the first time, disabused of that impression.

It would unduly and improperly extend this opinion to attempt to further recite in detail the evidence, much of it documentary, introduced both by the State and the defense. Objection is made that the letters introduced by the State throw no light upon the transaction, but serve only to prejudice the jury against the defendant by bringing before them matters entirely unconnected with the issue. But our attention is not directed to any specific letters or parts thereof in support of such general objection.

It is urged also that it was improper to permit the introduction of the testimony as to statements made by plaintiff in error after the delivery of the deed from Bryan to the effect that the "Cambridge" was purchased by the Clark syndicate, and that H. P. Simmons took the title as trustee for the said syndicate. While it is true that such statements made subsequent to the conveyance could have had no effect to induce Bryan to part with his property, they were, we think, admissible as tending to show that plaintiff in error was making the same—not merely similar—statements of fact as to the completed transaction to parties who knew of Bryan's conveyance, and were in communication with him, that Bryan testifies were made to him to obtain his signature to the deed of conveyance. The testimony tended to show that plaintiff in error was making such representations, not merely to impose upon the parties to whom they were made, but to keep up the deception upon Bryan. The testimony thus tended to corroborate the latter, and was in the nature of admissions by plaintiff in error as to the fact of making such representations.

Objection is made to the indictment, that it fails to charge that plaintiff in error obtained Bryan's signature with intent to cheat and defraud; that no contract or exchange of property is alleged and no reason shown for giving the deed; and that it is not alleged that Bryan suffered any loss by the signature and delivery.

The indictment contains six counts, but the State relies upon the sufficiency of the third and fourth, to the support of which it is said the evidence was mainly directed. These counts differ only in that the fourth sets out the deed in full.

The statute provides that " whoever with intent to cheat and defraud another, designedly, by any false pretense, obtains. the signature of any person to any written instrument, or obtains from any person any money, personal property or other valuable thing, shall be fined," etc. We think the indictment substantially alleges the statutory offense. It states that plaintiff in error, designedly and with intent to defraud, made false pretenses with the design and for the purpose of inducing Bryan to place his signature to the deed of conveyance, by which false pretenses he did obtain such signature, and that said false pretenses were made with the design and purpose to cheat and defraud said Bryan.

With regard to the second of the objections last referred to, it is sufficient to say that it was not necessary to allege or prove a contract for exchange of property in order to sustain an indictment for obtaining a signature to a written instrument by false pretenses, and it is not quite correct to say that no reason for giving the deed is set forth. The indictment charges that it was induced by a false pretense that the syndicate was assuming and agreeing to pay an incumbrance of $75,000 upon the property conveyed.

Neither is it necessary, under an indictment for obtaining, with intent to cheat and defraud, a signature to a written instrument by false pretenses, to allege or prove that any loss was thereby suffered. Bishop's New Criminal Law, Vol. 2, Sec. 460, and cases there cited.

We can not agree with counsel for plaintiff in error that the allegations of the indictment were not sustained by the evidence. The testimony was conflicting, it is true, but there was ample evidence to sustain the finding if the jury believed the facts were as the evidence for the State tended to show. The case seems to have been fairly submitted to the jury. It was for the latter to determine the issues of fact. We find no sufficient reason to interfere with their verdict, and no substantial error in the rulings and instructions of the court has been brought to our attention.

The judgment of the Criminal Court will be affirmed.